UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   Case No.: 8:23-cr-25-VMC-AEP

CALEB HUNTER FREESTONE,
AMBER MARIE SMITH-STEWART,
ANNARELLA RIVERA, and
GABRIELLA VICTORIA OROPESA
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Amber Marie Smith-Stewart's Motion to Dismiss All Counts (Doc. # 140), filed on July 14, 2023. Defendant Caleb Hunter Freestone has adopted the Motion. (Doc. # 150). The United States of America responded on July 28, 2023. (Doc. # 145). For the reasons that follow, the Motion is denied.

I.  **Background**

On March 23, 2023, Smith-Stewart and three co-defendants, Caleb Hunter Freestone, Gabriella Victoria Oropesa, and Annarella Rivera, were indicted via superseding indictment. (Doc. # 54). Count One charges all four defendants with conspiracy to violate rights secured by the Free Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248. (Id. at 1-2). Counts Two and Three charge Freestone, Smith-

1

Stewart, and Rivera with substantive violations of the FACE Act. (Id. at 4-5).

The superseding indictment alleges that the Defendants conspired to and did "spray paint[] threats of force" on the building of a reproductive health facility in this District ("Facility B") and also conspired to spray paint two other reproductive health facilities outside of this District ("Facility A" & "Facility C"). (Id. at 2-5). The victim facilities are "reproductive health facilities that provide abortion alternatives including counselling, pregnancy testing, ultrasound examinations, and referral services relating to the human reproductive system." (Id. at 2).

Smith-Stewart argues that all counts of the superseding indictment should be dismissed because "[n]one of the facilities named in the indictment are properly alleged to provide 'reproductive health services'" under the FACE Act. (Doc. # 140 at 1). The United States has responded. (Doc. # 145). The Motion is ripe for review.

II. **Legal Standard**

"This Court may resolve a motion to dismiss in a criminal case when the 'infirmity' in the indictment is a matter of law and not one of the relevant facts is disputed." United States v. Al-Arian, 308 F. Supp. 2d 1322, 1332 (M.D. Fla.

2004). Here, Smith-Stewart moves under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which provides for a motion to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

"In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). An indictment is facially sufficient so long as it "present[s] the essential elements of the charged offense, notifie[s] the accused of the charges to be defended against, and plainly enable[s] him to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Woodruff, 296 F.3d 1041, 1048 (11th Cir. 2002).

### III. Analysis

The FACE Act makes it a crime to, "by force or threat of force or by physical obstruction, intentionally injure[], intimidate[] or interfere[] with or attempt[] to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing **reproductive health services**." 18 U.S.C. §

3

248(a)(1) (emphasis added). It is also a crime to "intentionally damage[] or destroy[] the property of a **facility**, or attempt[] to do so, because **such facility provides reproductive health services**, or intentionally damage[] or destroy[] the property of a place of religious worship." 18 U.S.C. § 248(a)(3) (emphasis added).

"The term 'facility' includes a hospital, clinic, physician's office, or other facility that provides reproductive health services, and includes the building or structure in which the facility is located." 18 U.S.C. § 248(e)(1). "The term 'reproductive health services' means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and **includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy** or the termination of a pregnancy." 18 U.S.C. § 248(e)(5) (emphasis added).

According to Smith-Stewart, the superseding indictment fails to state an offense because "the indictment does not allege that the facilities are licensed, credentialed, or operated by trained professionals, as required by the binding precedent in [Raney v. Aware Woman Center for Choice, Inc., 224 F.3d 1266 (11th Cir. 2000)]." (Doc. # 140 at 2). Although

4

not alleged in the superseding indictment, Smith-Stewart argues that the victim facilities in this case were "crisis pregnancy centers (CPCs)" that "are non-profit organizations that are often Christian-affiliated and assert that they provide pregnancy testing and 'counseling,' but seek to intercept people looking for abortions." (Id.).

"Smith-Stewart submits that the indictment must include an allegation that the facilities allegedly affected by Defendants were staffed by trained healthcare professionals working in credentialed facilities that provide healthcare — as that term is commonly, medically, and legally understood." (Id. at 9). She acknowledges that the victim facilities here are alleged by the superseding indictment to provide free pregnancy counseling, pregnancy testing, and ultrasound examinations. (Id. at 10). Still, she maintains that such services do not fall within a "plain language definition of 'health care services'" because: "anyone can obtain an over-the-counter urine pregnancy test without a prescription"; "ultrasound technicians are not required to be licensed in Florida"; and "while Florida does generally require counselors to be licensed and credentialed, including family counselors [], there are licensing exceptions for employees

5

of non-profits providing free family counseling, and for religious counseling." (Id. at 10-11).

Smith-Stewart's argument fails. First, this Court looks only to the face of the superseding indictment in determining whether it states an offense. See Sharpe, 438 F.3d at 1263 ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes."); United States v. Salman, 378 F.3d 1266, 1267 (11th Cir. 2004) (explaining that the district court should not have "look[ed] beyond the face of the indictment and rul[ed] on the merits of the charges"). But Smith-Stewart seeks to have the Court look to many facts beyond the superseding indictment, including the availability of home pregnancy tests and Florida's various licensing and certification requirements. This the Court will not do on a motion to dismiss. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."). The government is correct that "the question of whether the government can prove that the facilities identified in the Superseding Indictment provide 'reproductive health services'

6

is a factual question for the jury; it is not a basis to dismiss the indictment altogether." (Doc. # 145 at 7).

Additionally, Smith-Stewart's reliance on Raney is misplaced at this juncture. Raney does not discuss what must be alleged in a criminal indictment asserting charges under the FACE Act. Rather, Raney was a civil case in which an anti-abortion protester attempted to assert a civil FACE Act claim against a women's reproductive health center after he was arrested on the sidewalk outside of the health center for violating the buffer zone created by a state court injunction. Raney, 224 F.3d at 1268. Plaintiff Raney argued that "the police officers, as agents of the [health center], prevented him from providing counseling services to women and men as they were entering and leaving the [health center] and thus violated his rights, protected under the FACE Act." Id.

The Eleventh Circuit held that Raney could not state a civil claim under the FACE Act because he did not provide or seek to provide, or obtain or seek to obtain, "services *in a facility* that provides reproductive health services." Id. (emphasis in original). The court wrote:

> By requiring that the person bringing a FACE action be seeking or providing reproductive health services in a facility, Congress recognized the difference between trained professionals who work in credentialed facilities and unregulated

7

>volunteer counselors who are not attached to recognized providers of reproductive healthcare. On each of the three occasions when Raney was arrested for violating the Madsen injunction, he was standing on a sidewalk outside of the Woman Center clinic. He therefore can claim neither that he was in a facility nor that he was offering the type of reproductive health services to which the FACE Act protects access.

Id. at 1269.

The Court agrees with the government that the Raney court "did not imply, much less expressly hold, that credentialing and licensing were elements that must be proved beyond a reasonable doubt" for a FACE Act criminal charge. (Doc. # 145 at 11). Thus, there is no basis to dismiss the superseding indictment for not alleging facts regarding the credentialing and licensing of the reproductive health facilities and their employees or volunteers.

In short, the superseding indictment sufficiently states offenses under the FACE Act and Section 241. It tracks the language of the statutes and includes all elements of the charged offenses. See Critzer, 951 F.2d at 308 ("Constitutional requirements are fulfilled by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." (citation and internal quotation marks omitted)). Indeed, the superseding indictment alleges that the victim facilities

8

were facilities that provide "reproductive health services," including "pregnancy counselling, pregnancy testing, and ultrasound examinations," as well as "referral services relating to the human reproductive system." (Doc. # 54 at 2-3). These activities facially fall within the FACE Act's definition of "reproductive health services." See 18 U.S.C. § 248(e)(5) ("The term 'reproductive health services' means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and **includes medical**, surgical, **counselling or referral services relating to the human reproductive system, including services relating to pregnancy** or the termination of a pregnancy." (emphasis added)); see also Greenhut v. Hand, 996 F. Supp. 372, 375 (D.N.J. 1998) (rejecting argument that civil plaintiff did not provide "reproductive health services," where the services "consist[ed] of merely guidance, counseling and referral services," because the "inclusion of nonmedical procedures within the definition of reproductive health services [under the FACE Act] could not be clearer").

Furthermore, as to Count One, the superseding indictment includes the necessary elements of a Section 241 conspiracy offense by alleging that the Defendants conspired to "to attack reproductive health services facilities that provide

9

abortion alternatives by spray painting threats of force and other intimidating messages on the property of the facilities, in order to injure, oppress, threaten, and intimidate the employees of those facilities from providing and seeking to provide reproductive health services." (Doc. # 54 at 2). Likewise, Count Two states a substantive FACE Act offense by alleging that the relevant Defendants, "aiding and abetting one another and other persons known and unknown," did "by threat of force intentionally injure, intimidate, and interfere with, and attempt to injure, intimidate, and interfere with employees" of Facility B by "spray paint[ing] threats of force" on Facility B's building because the employees "were providing and seeking to provide reproductive health services." (Id. at 4). Finally, Count Three states a FACE Act offense by alleging that the relevant Defendants, "aiding and abetting one another and other persons known and unknown," did "intentionally damage and destroy the property of" Facility B by "spray painting the facility" "because the facility provides reproductive health services." (Id. at 5).

The Motion is thus denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Amber Marie Smith-Stewart's Motion to Dismiss All Counts (Doc. # 140) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of August, 2023.

<u>VIRGINIA M. HERNANDEZ COVINGTON</u>
UNITED STATES DISTRICT JUDGE