UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:23-cr-25-VMC-AEP

AMBER MARIE SMITH-STEWART
    a/k/a "Ae"
    a/k/a "16inches"

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned attorneys, hereby submits this sentencing memorandum regarding Amber Marie Smith-Stewart. As further explained below, and pursuant to 18 U.S.C. § 3553(a), the United States respectfully asks the Court to sentence Defendant Smith-Stewart to a sentence within the guidelines range of 12–18 months. Defendant Smith-Stewart terrified workers and volunteers at crisis pregnancy resource centers throughout Florida by spray painting threats on their buildings in the dark of night, at a time when tensions over reproductive health rights were at their peak. For the following reasons, a 12–18 month sentence is a just sentence that comports with the factors in 18 U.S.C. § 3553(a).

## I.    Procedural History

On January 18, 2023, a federal grand jury in the Middle District of Florida, Tampa Division, returned a three-count superseding indictment charging the defendant, Amber Marie Smith-Stewart, with Conspiracy Against Rights, in violation of 18 U.S.C. § 241, a FACE Act offense in violation of 18 U.S.C. § 248(a)(1), and a FACE Act offense in violation of 18 U.S.C. § 248(a)(3). Doc. 1. On March 22, 2023,

a federal grand jury in the Middle District of Florida, Tampa Division, returned a superseding indictment adding additional defendants; the charges against Defendant Smith-Stewart did not change.  Doc. 54.  The charges arise from four defendants' (Smith-Stewart, Caleb Hunter Freestone, Annarella Rivera, and Gabriella Oropesa[1]) conduct from May through June 2022, during which they agreed to injure, oppress, threaten, or intimidate employees of reproductive health services facilities in the free exercise of the right to provide and seek to provide reproductive health services. Specifically, following the leak of the Supreme Court's draft opinion in *Dobbs v. Jackson Women's Health*, which overturned constitutional protections for abortion care, the defendants aligned themselves with a pro-choice extremist network known as "Jane's Revenge."   Jane's Revenge called for "autonomously organized self-defense networks" or "cells" to target pro-life pregnancy help centers with messages threatening that "if abortion isn't safe, you aren't either."

The defendants heeded the call.  Between May 28 and July 3, 2022, the defendants agreed to vandalize pro-life pregnancy help centers in Florida, including in the Middle District of Florida, with the threatening messages called for by Jane's Revenge.   The defendants specifically targeted reproductive health services facilities that provided and counseled alternatives to abortion.

On May 28, 2022, the defendants, along with unidentified co-conspirators, vandalized the Respect Life Pregnancy Help Center (RLPHC) in Hollywood, Florida.

---

[1]  Defendant Oropesa has not been convicted as of the date of sentencing.   She is currently awaiting trial on the charges in the superseding indictment.

According to its website, RLPHC offers "life-affirming services to abortion-vulnerable families."   In the dark of night and while obscuring their identities with masks, hats, and gloves, the defendants spray-painted threatening messages including "If abortions aren't SAFE then niether [sic] are you" as well as the Anarchist-A symbol and "JANES REVENGE."

On June 26, 2022, the defendants struck again.   This time, Defendant Smith-Stewart, along with Rivera and Freestone, vandalized the Life Choice Pregnancy Center (LCPC) in Winter Haven, Florida, within the Middle District of Florida. LCPC is a non-profit reproductive health services facility that offers free "life-affirming" pregnancy support services, according to its website.   Again in the dark of night and while obscuring their identities with masks, hats, and gloves, Defendants Smith-Stewart, Freestone, and Rivera spray painted threatening messages including "WE'RE COMING FOR U," as well as "We are everywhere," the Anarchist-A symbol, "ABORTIONS 4 ALL," and "JANES REVENGE."

On July 3, 2022, Defendants Freestone and Oropesa, along with unidentified co-conspirators, vandalized the Pregnancy Help Medical Clinic (PHMC) in Hialeah, Florida.   PHMC is a pro-life reproductive health services facility that offers free pregnancy healthcare and counsels against abortions.   Again in the dark of night and while obscuring their identities with masks, hats, and gloves, Defendants Freestone and Oropesa spray painted threatening messages including "If abortions aren't safe the [sic] neither are you."

Defendants Smith-Stewart and Freestone were arrested on January 23, 2023,

3

and their cell phones were lawfully seized.    Shortly after, Defendant Smith-Stewart informed Defendant Rivera that the group's phone chats were "compromised." Defendant Rivera quickly contacted certain contacts, asking that they remove Defendants Freestone and Smith-Stewart from certain chat groups.    Defendant Rivera further advised at least one contact that Smith-Stewart had obtained a new "secure phone" number following the FBI's seizure of Smith-Stewart's device.    That contact confirmed that "all chats involved nuked and replaced."

Defendant Smith-Stewart's conduct deeply impacted employees and volunteers of the targeted reproductive health facilities.    For example, the Director of LCPC implemented new security procedures, including keeping doors locked and moving to an appointment-only format.    Volunteers with licenses to carry firearms began guarding the building in the evening and overnight.    Employees experienced panic attacks, nightmares, gastrointestinal problems, and other physical manifestations of their fear. An employee of PHMC described feeling "terrorized," and continues to feel unsafe at work because of the fear the defendants' conduct instilled.

## II.    Plea Agreement

Defendant Smith-Stewart timely accepted responsibility for her actions and pleaded guilty to Count I of the superseding indictment at a plea hearing on June 14, 2024, held before Magistrate Judge Anthony E. Porcelli.    The Defendant consented to Magistrate Judge Porcelli adjudicating her guilty, and to the District Court Judge accepting or rejecting the plea and entering a sentence.    Doc. 223.    On June 17, 2024, District Judge Virginia M. Hernandez Covington accepted the plea and adjudicated

4

Defendant Rivera guilty. Doc. 230.

Defendant Smith-Stewart and the Government entered a plea agreement pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(1)(A). The United States agreed to recommend to the Court that the defendant be sentenced within the applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines. Doc. 203. The United States further agreed not to oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment pursuant to acceptance of responsibility, pursuant to USSG § 3E1.1(a). The United States also agreed to file motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level provided that the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of the Plea Agreement.

### III.    Presentence Report

In the Final Presentence Report, the United States Probation Office for the Middle District of Florida has calculated the advisory sentencing guideline range as 12–18 months, based on a total offense level of 13 and a criminal history category of I. (Presentence Report, ¶ 76). Additionally, the Court may impose a term of supervised release of not more than three years. (Presentence Report, ¶¶ 78, 79); *see also* 18 U.S.C. § 3583(b)(2) and USSG § 5D1.2(a)(2). The Government agrees with the Probation Office's calculated advisory range, including a two-level increase for obstruction of justice and a three-level reduction for acceptance of responsibility.

Because the applicable guideline range is in Zone C of the sentencing table, the minimum term may be satisfied by imprisonment; or imprisonment that includes a

term of supervised release that substitutes community confinement or home detention according to the schedule in USSG § 5C1.1(e) provided that at least one-half of the minimum term is satisfied by imprisonment.   Because the applicable guideline range is in Zone C of the sentencing table, the defendant is ineligible for probation.   USSG § 5B1.1.(a)(1).

## IV.   Defense Objection

Defendant Smith-Stewart objects to the applicability of USSG § 3C1.1, which provides for a two-level increase for obstruction of justice.   The Government disagrees.   Following her arrest and after her phone had been lawfully seized, Defendant Smith-Stewart took proactive steps to destroy evidence.   According to Defendant Rivera, Defendant Smith-Stewart used her husband's phone to inform Defendant Rivera that "all chats are compromised."   Defendant Rivera understood the directive, and told multiple associates to remove her, Defendant Smith-Stewart, and Defendant Freestone from chats.   Defendant Rivera specifically talked to associates about the concern, raised by Defendant Smith-Stewart, that the government had "compromised" chats.   In an exchange with a contact listed as "Luke," Luke advised Rivera that he had "nuked and replaced" all chats because "cops" got into Smith-Stewart's phone, and he specifically talked about concerns about the FBI seeing his name in the chats.   Defendant Rivera responded by providing "Luke" with Smith-Stewart's new "secure phone" number.   In short, Defendant Smith-Stewart's obstructive conduct was specifically intended to thwart the federal investigation of these offenses.   And she was successful; additional co-conspirators remain

6

unidentified, and the FBI was not able to recover the deleted chats during a forensic search of Smith-Stewart's phone.

This conduct is squarely within the type of conduct contemplated by USSG § 3C1.1. Comment 4(D) to § 3C1.1 lists "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material" to the official investigation as an example of conduct covered by § 3C1.1.   For these reasons, the Government agrees with the Probation Office's inclusion of the adjustment.

## V.    Sentencing Recommendation

Because the Defendant repeatedly spray-painted threatening messages on the buildings of crisis pregnancy centers – conduct that predictably terrified workers and volunteers – the Government recommends that this Court impose a sentence within the 12–18 month Guidelines range. The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although this Court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so."). This Court, therefore, "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the

former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

Section 3553 requires the court to consider the need for the sentence imposed to accomplish certain purposes, including to:   (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).   Section 3553(a) also requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, and then impose a sentence sufficient to comply with these purposes.   These factors support a sentence within the Guidelines range.

### A. *Seriousness of the offense*

First, the Defendant's offense is a serious one.   She repeatedly worked with others to spray-paint threats on pro-life pregnancy resource centers, simply because she disagreed with the services these centers offered.   The defendant is of course free to believe whatever she wants, but threatening those she disagrees with is completely unacceptable in a society governed by the rule of law.

The FACE Act guarantees that all citizens have the right to obtain or provide reproductive health services free from threats.   18 U.S.C. § 248(c)(1); *United States v. Freestone et. al*, 2023 WL 4824481, *3–4 (M.D. Fla. July 27, 2023).   This right provides critical protection for patients to seek reproductive health services *of their choice*, and

for clinicians to provide those services.   By threatening "if abortions aren't safe, then neither are you" and "we're coming for you," the defendants in this case sought to eliminate one of the choices available to patients:   the choice to obtain services at pro-life pregnancy resource centers.

The defendants targeted pro-life pregnancy resource centers for a reason.   They wanted their victims to suffer consequences for the Supreme Court's ruling in *Dobbs* – a ruling the victims had nothing to do with.   Predictably, the victims of their crime were terrified.   As described previously, the Director of LCPC implemented new security procedures, including keeping doors locked and moving to an appointment-only format.   Volunteers with licenses to carry firearms began guarding the building in the evening and overnight.   Employees experienced panic attacks, nightmares, gastrointestinal problems, and other physical manifestations of their fear. An employee of PHMC described feeling "terrorized," and continues to feel unsafe at work because of the fear the defendants' conduct instilled.

Defendant Smith-Stewart pled guilty to a felony civil rights conspiracy.   As the Supreme Court has long held, "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Callanan v. United States*, 364 U.S. 587, 593 (1961).   The defendants argue that their conduct was merely garden-variety graffiti tagging.   This is incorrect.   The defendants' conduct was a collective criminal agreement to oppress crisis pregnancy workers in the free exercise of their civil rights by targeting them with threatening messages.   The defendants freely admitted this to be true.   Doc. 205 at 11.   The defendants' messages

are a far cry from garden-variety vandalism.    Compare the defendants' conduct
(spray-painting messages like "if abortions aren't safe then neither are you," "we are
everywhere," and "we're coming for you") with the conduct of the defendant in *United
States v. Durant*, 3:23-mj-08003 (N.D.Ohio July 5, 2023).    In *Durant*, the defendant,
working alone, spray painted one crisis pregnancy center with messages including
"LIARS," "Fund Abortion," "Abort God," and "Jane's Revenge." *See* Press Release:
"Ohio Woman Pleads Guilty to freedom of Access to Clinic Entrances (FACE) Act
Violation for Damaging Pregnancy Center, *available at* www.justice.gov-
/opa/pr/ohio-woman-pleads-guilty-freedom-access-clinic-entrances-face-act-
violation-damaging. Unlike these defendants, Durant did not spray paint *threats*.
Accordingly, she was charged with and convicted only of defacing a clinic (a
misdemeanor), and was sentenced to 24 months of probation.    *Durant*, 3:23-mj-08003
at Doc. 7.    The United States requests a Guidelines sentence in this case, where the
defendants – working together – spray painted threats on multiple crisis pregnancy
centers and pled guilty to a felony civil rights conspiracy.

B.  *Promoting respect for the law and providing just punishment.*

Second, a Guidelines sentence is necessary to promote respect for the law and
provide just punishment for the offense.    The defendants claim that their conduct was
merely misplaced political advocacy against the overturn of *Roe v. Wade*.
Respectfully, that argument is unconvincing.    First, Defendant Smith-Stewart, and
her co-defendants, regularly engage in protest and other lawful political advocacy; and
they sometimes engage in unlawful protest.    *See* PSR at ¶¶ 48, 51.    To claim that

spray-painting threats on crisis pregnancy resource centers – organizations that have nothing to do with the Supreme Court's decision-making process – was merely misplaced advocacy makes no sense in light of the defendants' experience with both lawful and unlawful protest.   They know the difference.   Second, the idea that the defendants acted in the heat of an emotional response to the overturn of *Roe* does not make sense: they vandalized three separate facilities over the course of approximately five weeks.   The defendants' conduct was planned and coordinated.   These were not actions taken in the heat of the moment.   Defendant Smith-Stewart *chose* to disrespect the law over and over; she *chose* to oppress the civil rights of reproductive health care workers by threatening them because her beliefs about the work they do.

Defendant Smith-Stewart may vigorously believe in her cause.   But this is no defense to her conduct.   *See, e.g.*, *Reynolds v. United States*, 98 U.S. 145, 167 (1878) ("when the offence consists of a positive act which is knowingly done, it would be dangerous to hold that the offender might escape punishment because he religiously believed the law which he had broken ought never to have been made."); *United States v. Grady*, 18 F.4th 1275, 1294 (11th Cir. 2021) ("The fact that she honestly believed her actions were lawful because of her personal views on nuclear weapons is irrelevant.") (*citing United States v. Kelly*, 676 F.3d 912, 919 (9th Cir. 2012) ("[E]ven defendants who genuinely believe that their intentional, unlawful actions are consistent with 'the conscience of the people,' as appellants put it, are guilty.")); *United States v. Platte*, 401 F.3d 1176, 1181 (10th Cir. 2005) ("Civil disobedience can be an act of great religious and moral courage and society may ultimately benefit. But . . . one's motives cannot

11

excuse the violation in the eyes of the law."); *United States v. Kabat*, 797 F.2d 580, 589 n.10 (8th Cir. 1986) (upholding jury charge that "if one commits a crime under the belief, however sincere, that his conduct was religiously, politically or morally required, that is no defense to the commission of a crime."); *United States v. Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969) ("The defendants' motivation in the instant case – the fact that they engaged in a protest in the sincere belief that they were breaking the law in a good cause – cannot be acceptable legal defense or justification. Their sincerity is beyond question.   It implies no disparagement of their idealism to say that society will not tolerate the means they chose to register their opposition . . . .").

The defendant completely disrespected the rule of law when she transformed her personal and political beliefs into threats against workers and volunteers who spend their days trying to help women in crisis.   She further disrespected the law when, following her arrest and the lawful seizure of her phone, Defendant Smith-Stewart took it upon herself to ensure that incriminating chat records were "nuked and replaced," by advising Defendant Rivera that all chats were "compromised."

For these reasons, a Guidelines sentence is necessary to promote respect for the rule of law and to provide just punishment for the offense.

C. *General and specific deterrence.*

A Guidelines sentence is necessary to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).   First, a Guidelines sentence would deter other abortion extremists (whether pro-choice or pro-life) from interfering with the right to obtain and provide reproductive health services. The debate over the

availability of various forms of reproductive health care in this country is incredibly charged, and deterring other would-be criminals is a key purpose of sentencing. *See United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) (finding the district court abused its discretion when it "reasoned away the statutory command that it consider the need for [the defendant]'s sentence to have a general deterrent effect[.]"); *United States v. Irey*, 612 F.3d 1160, 1193 (11th Cir. 2010); ("General deterrence is one of the key purposes of sentencing, and the district court abused its discretion when it failed to give that matter its proper weight.") (quoting *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).    Without imposition of a Guidelines sentence here, would-be criminals will not be discouraged from engaging in misconduct and may believe that there are relatively minimal consequences for committing crimes that target the provision of reproductive health care.

A Guidelines sentence is also necessary for specific deterrence.    Defendant Smith-Stewart was arrested on August 6, 2022 for trespassing after being ordered to vacate a property where she was causing a disturbance. PSR ¶ 48. For context, Defendant Smith-Stewart was protesting outside of a hotel that was hosting a public forum involving topics of interest to the LGBTQ+ community.    Many people protested in designated areas outside of the hotel, but Defendant Smith-Stewart and a few others were confrontational and antagonizing toward the law enforcement officers who were monitoring the protests.    Defendant Smith-Stewart was eventually ordered to leave the premises, and she refused, resulting in the trespass arrest.

Then, in October 2022, Defendant Smith-Stewart was again arrested, this time

for disorderly conduct/breach of the peace. PSR ¶ 51.    For context, Defendant Smith-Stewart was illegally protesting without a permit, along with Defendant Freestone. Defendant Smith-Stewart used a megaphone to yell obscenities at the police and at passersby.    *Id.*    Although we are unaware of any recent criminal misconduct, an adequate sentence is necessary to deter Defendant Smith-Stewart form future criminal activity.

>    D. *Characteristics of the defendant.*

The United States is unaware of any characteristics of this defendant that would warrant a downward departure from the Guidelines range.

>    E. *Remaining factors.*

The remainder of the factors described in 18 U.S.C. § 3553(a) are concerned with the kinds of sentences available to the court, the category of offense, any amendments to the guidelines, any pertinent policy statements by the USSG., and a need for unwanted sentencing disparities and restitution. The United States submits that the recommended sentence is below the statutory maximum for these offenses and that there are no amendments to the Guidelines or relevant federal statutes that apply to this Defendant. The United States notes that this sentence is not pursuant to a violation of probation or supervised release. The United States is unaware of any pertinent policy statements concerning this Defendant's charged conduct. The United States has complied with the requirements of the Crime Victims' Rights Act but has not yet obtained information supporting the restitution request in this case.

## VI.  Conclusion

For the foregoing reasons, the United States requests that Defendant Smith-Stewart be sentenced within the advisory Guidelines range, as calculated by the Court, and at least one year of supervised release.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

KRISTEN CLARKE
Assistant Attorney General

*/s/ Courtney Derry*
COURTNEY DERRY
Assistant United States Attorney
Florida Bar Number 41125
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
Email: Courtney.Derry@usdoj.gov

*/s/ Laura-Kate Bernstein*
LAURA-KATE BERNSTEIN
Trial Attorney
Maryland Bar Number 1212110224
950 Pennsylvania Ave. NW, 4CON 7.109
Washington, DC 20530
Telephone: (202) 598-3519
Facsimile: (202) 514-8336
Email: Laura-Kate.Bernstein2@usdoj.gov

**U.S. v. Smith-Stewart**                    **Case No. 8:23-cr-25-VMC-AEP**

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2024, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to counsel of record.

*/s/ Laura-Kate Bernstein*
LAURA-KATE BERNSTEIN
Trial Attorney
Maryland Bar Number 1212110224
950 Pennsylvania Ave. NW, 4CON 7.109
Washington, DC 20530
Telephone: (202) 598-3519
Facsimile: (202) 514-8336
Email: Laura-Kate.Bernstein2@usdoj.gov